IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JORDAN D.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No.  3:21-cv-01528-HZ

OPINION & ORDER

James S. Coon
Thomas, Coon, Newton & Frost
820 SW Second Ave., Suite 200
Portland, OR 97204

    Attorneys for Plaintiff

Kevin Danielson
Executive Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Shata L. Stucky
Social Security Administration
Office of the General Counsel
6401 Security Boulevard
Baltimore, MD 21235

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Jordan D. ("Plaintiff") brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on March 1, 2019, alleging an onset date of January 1, 2017. Tr. 208-21.[2] Plaintiff's date last insured ("DLI") is September 30, 2022. Tr. 61. His application was denied initially and on reconsideration. Tr. 59, 85.

On January 19, 2021, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 31. On January 29, 2021, the ALJ found Plaintiff not disabled. Tr. 13-25. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on major depression, traumatic brain injury, cognitive impairment, and post-traumatic stress disorder. Tr. 250. At the time of his alleged onset date, he was twenty-three years old. Tr. 61. He has a high school education and completed one year of

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 11-1.

college. Tr. 35, 48. In his work history report, Plaintiff listed twenty-seven different jobs that he held between 2018 and 2010. Tr. 285-99. However, the ALJ concluded that Plaintiff did not have any job long enough nor did he have sufficient gainful activity for any job to qualify as past relevant work pursuant to 20 C.F.R. §§ 404.1565 and 416.965. Tr. 23, 49.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

3 – OPINION & ORDER

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his alleged onset date through his date last insured. Tr. 15. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "affective disorder (depression or dysthymia) and anxiety." *Id.* However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 17. At step four, the ALJ concluded that Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) with the following limitations:

> He can understand, remember, and carry out simple instructions. He can maintain concentration, persistence, and pace for simple tasks. He should not interact with the public and should not perform teamwork activities, but he can interact normally with supervisors.

Tr. 18. As explained above, the ALJ found that Plaintiff had no past relevant work. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "hand packager (DOT#920.587-018; 110,000 positions nationally), cleaner II (DOT #919.687-014; 86,000 positions nationally), and cleaner, lab equipment (DOT

#381.687-022; 42,000 positions nationally).″ Tr. 24. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 25.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (quotation marks omitted).

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) failing to find Plaintiff's schizotypal personality disorder a severe medically determinable impairment at step two; (2) improperly rejecting parts of the medical opinions of Dr. Tyler Duffield, Dr. Scott Alvord, and the state agency doctors; and (3) improperly discounting Plaintiff's subjective symptom testimony regarding his ability to interact with others. This Court disagrees.

/ / /

/ / /

5 – OPINION & ORDER

I.      **Severe Medically Determinable Impairments at Step Two**

At step two, the ALJ determined that Plaintiff had some severe medically determinable impairments that "significantly limit [his] ability to perform basic work activities," including depressive affective disorder and anxiety. Tr. 15-16. Plaintiff asserts that the ALJ erred in not also finding his schizotypal personality disorder to be severe medically determinable impairments.[3] Specifically, Plaintiff argues that the ALJ misunderstood Dr. Duffield's neuropsychological evaluation and therefore erred in not finding the diagnosis medically determined at step two.

An ALJ's analysis of whether a claimant has a severe medically determinable impairment at step two is "merely a threshold determination to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017); *see Webb v. Barnhardt*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (brackets omitted)) ("Step two . . . is de minimis screening device used to dispose of groundless claims."). A reviewing court must determine whether the ALJ's conclusion that a claimant's alleged impairment is not medically severe was based on substantial evidence. Most step two errors are harmless so long as the ALJ found at least one severe medically determinable impairment, the sequential process proceeded to step three, and the ALJ included limitations due to all the medically determinable impairments, severe and non-severe, in formulating the claimant's residual functional capacity.

---

[3] The Mayo Clinic provides that people "with schizotypal personality disorder are often described as odd or eccentric and usually have few, if any close relationships. They generally don't understand how relationships form or the impact of their behavior on others. . . . These problems may lead to severe anxiety and a tendency to avoid social situations, as the person with schizotypal personality disorder tends to hold peculiar beliefs and may have difficulty with responding appropriately to social cues." Mayo Clinic Staff, *Schizotypal personality disorder*, Mayo Clinic, Diseases and Conditions (Dec. 13, 2022), https://www.mayoclinic.org/diseases-conditions/schizotypal-personality-disorder/symptoms-causes/syc-20353919.

*Buck*, 869 F.3d at 1049. Thus, even if the ALJ erroneously finds that particular impairments are non-severe at step two, the error is harmless so long as the ALJ considers all of the claimant's severe and non-severe impairments at subsequent steps of the analysis. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *see Graybeal v. Astrue*, No. 3:10-cv-06387-PK, 2011 WL 6019434, at *6 (D. Or. Nov. 2, 2011) ("An ALJ's erroneous finding that an impairment is non-severe constitutes harmless error [] if the ALJ resolves step two in the claimant's favor and properly considers limitations imposed by the impairment at other steps of the sequential process."); *cf. Bruce C. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-cv-01814-HZ, 2019 WL 553449, at *6 (D. Or. Feb. 8, 2019) (finding that the ALJ's step two errors were not harmless because "the sole reason for the ALJ's rejection of these specific limitations [in the RFC] is the ALJ's erroneous step-two finding").

   The ALJ did not address Dr. Duffield's diagnosis of schizotypal personality disorder at step two, but he did when formulating the RFC. Dr. Duffield performed a neuropsychological evaluation on Plaintiff in February 2019. Tr. 414. In the evaluation, Dr. Duffield explained that "[i]n the aggregate, this personality profile and clinical observations are consistent with schizotypal personality disorder." *Id.* Regarding Plaintiff's cognitive difficulties, Dr. Duffield explained that Plaintiff's "cognitive difficulties are consistent with [the profile of someone who has difficulties with concentration and attention], although the test findings are not reported (and will not be interpreted) due to variable performances of validity measures." *Id.* The ALJ found Dr. Duffield's medical opinion not persuasive because the doctor stated his test findings were not valid due to Plaintiff's variable performance and because the doctor's findings were inconsistent with the medical record. Tr. 22.

7 – OPINION & ORDER

Plaintiff argues that the ALJ "misread" the evaluation, and that Dr. Duffield disregarded the results only as they related to Plaintiff's cognitive evaluation, and not as related to his "personality/psychopathology" evaluation, which would include the schizotypal personality disorder diagnosis. Pl.'s Br. at 9 (ECF No. 31). The Court agrees with Plaintiff that Dr. Duffield's schizotypal personality disorder diagnosis was a medically determinable impairment, and the ALJ should have addressed whether it was severe or non-severe at step two.

However, the ALJ's error was harmless. The ALJ found other severe medically determinable impairments and proceeded with the subsequent steps in the disability analysis. Moreover, in formulating the RFC, the ALJ did consider Plaintiff's symptoms related to the schizotypal personality disorder, including his difficulties in interacting with others, by limiting him to no interaction with the public and no teamwork activities. Tr. 18. Thus, the error at step two was harmless. *See Lewis*, 498 F.3d at 911 (finding that an ALJ's errors at step two are harmless if the ALJ accounts for the limitations from impairments in the RFC).

**II.    Medical Opinion Evidence**

Next, Plaintiff argues that the ALJ improperly evaluated the medical opinions of Dr. Duffield, Dr. Alvord, and the two state agency doctors, Scott Kaper and Joshua Boyd. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in

the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

### A.     Dr. Duffield

As explained above, Dr. Duffield conducted a neuropsychological evaluation on Plaintiff in February 2019. Tr. 413. Dr. Duffield opined that Plaintiff is not able to appropriately temper his emotional expressions or his social interactions. Tr. 414. He also suggested that Plaintiff's profile was consistent with someone who has a great deal of emotional turmoil and difficulty with concentration and attention. *Id.* The ALJ concluded that Dr. Duffield's opinion was not persuasive, in part, because Dr. Duffield "based his opinions on interpretations of testing, after specifically indicating that he was not going to interpret or report the testing due to claimant's variable outcomes on multiple performance validity test." Tr. 22.

9 – OPINION & ORDER

Plaintiff argues that the ALJ's reasons for rejecting Dr. Duffield's medical opinion is not supported by substantial evidence. Specifically, Plaintiff argues that "[t]he ALJ's description of the test validity is incorrect. Dr. Duffield plainly states that his *diagnosis and opinion about functionality* is based on the 'personality/psychopathology' testing, which was valid and interpretable, not the *cognitive testing*, which was not interpretable." Pl. Brief at 14 (emphasis added). The Court agrees with two of Plaintiff's arguments: (1) as explained above, that Dr. Duffield's diagnosis of schizotypal personality disorder was valid, and (2) Dr. Duffield's opinions relating to Plaintiff's cognitive testing was invalid. Where the Court disagrees with Plaintiff is whether Dr. Duffield offered any opinions regarding Plaintiff's functionality.

In the beginning of his evaluation, Dr. Duffield offered the following explanation of the purpose of the exam:

> Based on the presenting concerns contained within this report and Jordan's reported medical history, a neuropsychological evaluation was deemed appropriate and necessary in order to determine Jordan's current levels of *neurocognitive function*, as well as assist in the development of diagnostic impressions and treatment recommendations.

Tr. 415 (emphasis added). Dr. Duffield then reported the results as follows:

> All tests/measures were administered in a professional and standardized manner. Multiple performance validity tests demonstrated variable outcomes. Therefore, testing data was not interpreted nor will be reported.
>
> Jordan's reporting on a measure assessing psychopathology and personality traits indicated he changed response style on the latter half of the test and reported physical symptoms of greater frequency/severity than is typical of medical populations. Despite these elevations on validity scales, *this profile is still deemed interpretable*. Jordan demonstrated significantly elevated scores on scale 1 [hypochondriasis], scale 3 [hysteria], scale 4 [psychopathic deviate], scale 6 [paranoia], scale 7 [obsessive-compulsive tendency], scale 8 [schizophrenia], and scale 10 [social introversion]. In addition, Jordan's responding on this measure indicated elevated scores in anxiety, depression, obsessiveness, health concern, bizarre mentation, low self-esteem, social discomfort, family problems, and work interference.

Tr. 416 (emphasis added). Dr. Duffield did not report any "functionality" results, cognitive or otherwise. Indeed, Dr. Duffield did not offer any opinions regarding Plaintiff's limitations, functional or cognitive. Other than the diagnosis, Plaintiff does not point to any limitations opined by Dr. Duffield that the ALJ erred in rejecting, nor are there any. Accordingly, assuming without deciding that the ALJ erred in rejecting Dr. Duffield's medical opinion, any error was harmless.

### B.     Dr. Alvord

Dr. Alvord evaluated Plaintiff on June 4, 2019. Tr. 404. He diagnosed Plaintiff with anxiety disorder and dysthymia and suspected that Plaintiff meets the criteria for autism spectrum disorder, but that further testing would be needed to confirm a diagnosis. Tr. 407. Dr. Alvord opined that Plaintiff would not have difficult performing simple and repetitive tasks, but that he would have moderate difficulty (1) performing detailed and complicated tasks; (2) accepting instructions from supervisors; (3) interacting with co-workers and the public; (4) performing work activities on a consistent basis without special or additional instructions/accommodations; (5) performing work activities on a consistent basis without special or additional instructions/accommodations; (6) completing a normal workday/workweek without interruptions; and (7) dealing with usual stress encountered in the workplace. *Id.*

The ALJ found Dr. Alvord's opinion somewhat persuasive, finding that Dr. Alvord's opinion that Plaintiff had difficulty with social interactions and ability to perform simple tasks consistent with other medical findings and Plaintiff's daily activities. *Id.* But the ALJ found that Dr. Alvord's opinion that Plaintiff would have difficulty accepting instructions from supervisors and that he would have issues with regular attendance at work was inconsistent with the medical record and Plaintiff's daily living activities. *Id.*

11 – OPINION & ORDER

Under the new regulations, supportability and consistency are the most important factors when evaluating medical opinion evidence. Here, the ALJ identified a lack of support for the limitations. There is little evidence in the record to support a finding that Plaintiff has an issue with supervisors or that he lost jobs due to lack of attendance. *See, e.g.,* Tr. 397 (Plaintiff stated that "'it's hard for me to focus' as the reason for" having so many different jobs); 416 (Plaintiff "explained he was fired from a number of jobs due to poor social relationships with employers, being late to work, or other unknown reasons" and he also "quit multiple jobs because he 'knew something was wrong'"); 466 ("Client would also like a job. He states that washing dishes is a good position for him because he doesn't have to deal with people too much."); 515 (Plaintiff "stated he has had around thirty different jobs in total" and "specified that 'it's hard for me to focus' as the reason for the quantity of jobs"). Additionally, in his function report, Plaintiff explained that his ability to work is impacted by the fact that he "can't focus on anything too long," "social anxiety makes handling customers very difficult," that he "get[s] distracted easily," and that he "forget[s] a lot, and half the time it's mid-conversation." Tr. 277. When asked "[h]ow well do you get along with authority figures," Plaintiff answered, "Fine, enough. I'm respectful." Tr. 282. Accordingly, the ALJ's rationale that Dr. Alvord's opinion that Plaintiff would have difficulty interacting with supervisors was inconsistent with the record is supported by substantial evidence.

The ALJ also found that Dr. Alvord's opinion that Plaintiff would have moderate difficulty accepting instructions from supervisors, that he would need special instructions or accommodations, or that he would miss work inconsistent with Plaintiff's daily living activities. Tr. 23. Plaintiff reported to the ALJ and noted consistently to his medical providers that he lives with and is the sole caretaker of his aging grandparents. Tr. 278, 372 (working with therapist on

"his feelings of frustration and sadness with having to be the primary caregiver for his grandparents over the next two weeks"); 405 ("Currently [Plaintiff] is living with his grandparents. He stated, 'I watch over them.'"); 453 ("[Plaintiff] identifies caring for his elderly grandparents as a chronic stressor."); 493 (working with therapist on "his feelings of frustration with his overwhelming anxiety and stress around being the only caregiver of his aging grandparents"). He does the dishes, laundry, and cleaning, and helps with the dogs and checking on his grandfather throughout the day. Tr. 278. The ALJ's conclusion that Plaintiff's daily living activities are inconsistent with parts of Dr. Alvord's medical opinion are supported by substantial evidence. *See Williams v. Colvin*, No. 3:13-cv-01029-HZ, 2014 WL 2807672, at *6 (D. Or. 2014) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)) ("Specific, legitimate reasons for rejecting a physician's opinion may include . . . inconsistency with a claimant's daily activities.").

      C.    **Drs. Kaper and Boyds**

The ALJ found the state agency psychological consultants, Drs. Scott Kaper and Joshua Boyd persuasive. Tr. 23. However, the ALJ again rejected the doctors' opinion that Plaintiff could not interact with supervisors. *Id.* In addition for the reasons stated above, the ALJ relied on Plaintiff's own testimony that he is not argumentative, he gets along with authority figures, and has not been fired from a job because of his inability to get along with others. Tr. 37-38, 46. As already explained, the ALJ's rational is supported by substantial evidence.

**III.    Subjective Symptom Testimony**

Plaintiff argues that the ALJ erred in rejecting Plaintiff's testimony that he has difficulty interacting with others. As Defendant correctly notes, the ALJ did not reject Plaintiff's testimony that he has difficulty interacting with others. To the contrary, the ALJ incorporated Plaintiff's

limitation into the RFC, concluding that Plaintiff "should not interact with the public and should not perform teamwork activities." Tr. 18. By limiting Plaintiff's interactions with others directly into the RFC, the ALJ found Plaintiff's testimony persuasive. To the extent Plaintiff is arguing that the ALJ's conclusion that he can "interact normally with supervisors" was improper, that argument has been rejected by the Court. Thus, the ALJ did not reject Plaintiff's testimony regarding his inability to interact with others.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED:   September 22, 2023   .

_____
MARCO A. HERNÁNDEZ
United States District Judge